THE PEOPLE OF THE STATE OF NEW YORK, RESPOND-
ENT, *v.* DAVID A. DISHLER, APPELLANT.*

*Perjury — when a witness testifying under an honest mistake is not guilty of that offense — Penal Code, sec. 96.*

To justify a conviction of perjury under section 96 of the Penal Code, providing
that any person who "willfully and knowingly testifies, declares, deposes, or
certifies falsely," in the cases therein specified, shall be guilty of perjury, it
must be shown that the falsity of the testimony was known to the witness at
the time it was given. A conviction cannot be had where it appears that the
testimony was given under an honest mistake or misapprehension, and that
the witness honestly believed that the testimony given was true.

APPEAL from a judgment of conviction in Onondaga county, on
a verdict taken in the Onondaga Court of Sessions, finding the
defendant guilty of perjury, and also from an order denying a
motion to set aside the proceedings and trial, and in arrest of judg-
ment, and also from an order denying a motion for a new trial made
upon the minutes.

Joseph Parish was indicted in the Court of Oyer and Terminer of
Onondaga county charged with grand larceny in the first degree,
alleged to have been committed in the city of Syracuse on the 29th
of December, 1882. The indictment of Parish was remitted to the
Court of Sessions of that county, and after plea of not guilty, a trial
was had in that court on the 26th and 27th days of December, 1883,
and Parish was convicted.

During that trial the appellant was called and duly sworn in due
form of law as a witness in behalf of the accused and among other
things testified, as the indictment herein alleges, viz.: " I (meaning
the said David A. Dishler) recollect in the latter part of December
last (meaning in the year 1882) of seeing Mr. Parish (meaning him
the said Joseph Parish) on Friday, the day of the month was the
twenty ninth day of December (meaning the twenty-ninth day of
December, eighteen hundred and eighty-two), I (meaning him the
said David A. Dishler) should judge the time of day I (meaning
him the said David A. Dishler) first saw him (meaning the said
Joseph Parish) to be about ten o'clock in the morning (meaning ten
o'clock in the morning of the twenty-ninth day of December, in the

* Decided, September, 1885.

year eighteen hundred and eighty-two), I (meaning him the said David A. Dishler) saw him (meaning the said Joseph Parish) at Baggs' hotel, about the hour of twelve o'clock in the morning of the twenty-ninth day of December, in the year 1882, Mr. Parish (meaning the said Joseph Parish) took dinner with me on that day (*　*　*) took dinner with him (the said David A. Dishler) at Miss Colemans', a private restaurant close by Baggs' hotel on Main street. *　*　* I (meaning him the said David A. Dishler) left this restaurant between the hours of one and two with Mr. Parish." Other circumstances are stated in the indictment respecting the testimony of Dishler, and the details given by him as a witness in respect to the presence of Parish in the city of Utica on the 29th of December, 1882. The indictment then says : " Whereas, in truth and in fact, he, the said David Dishler did not recollect in the latter part of December last (meaning the year 1882) of seeing Mr. Parish (meaning him the said Joseph Parish) on Friday, the twenty-ninth day of December (meaning the twenty-ninth day of December, eighteen hundred and eighty-two) aforesaid."

Then follow other words in the indictment negativing the alleged evidence of said Dishler, so given upon the trial of said Parish as aforesaid and thereupon the indictment concludes that the said Dishler " did unlawfully, corruptly, willfully, falsely and feloniously then and there commit willful and corrupt perjury against the form of the statute in such case made and provided .*　*　*."

*E. D. Mathews*, for the appellant.

*Ceylon H. Lewis*, district attorney, for the respondent.

HARDIN, P. J. :

Section 96 of the Penal Code relates to the crime of perjury. It says " a person who swears or affirms that he will truly testify *　*.　* in an action or a special proceeding *　*　* and who in such action or proceeding or on such hearing, inquiry or other occasion, willfully and knowingly testifies, declares, deposes or certifies, falsely in any material matter or states in his testimony, declaration, deposition, affidavit or certificate any material matter to be true which he knows to be false, is guilty of perjury."

Section 101 of the Penal Code is as follows : "An unqualified statement of that which one does not know to be true, is equivalent

to a statement of that which he knows to be false." This latter provision is new; however, it was held in *People* v. *McKinney* (3 Park., 510), that a person might commit perjury by testifying to something true in fact though he did not know whether or not it was true. (See, also, *Commonwealth* v. *Cornish*, 6 Binney [Pa.], 249.)

In the body of the charge the court stated the general principles of law applicable in the trial of a case of perjury. The case states, namely: " At the close of the charge the counsel for the prisoner took the following exceptions to the said charge, and to the following portions thereof, and said prisoner's counsel also thereupon requested said court to charge the said jury as follows, and made the following requests to charge, and took and entered the following exceptions to the following refusals of said court to charge as requested." Then follows several requests, and among them the cases states as follows, viz.: " I ask your honor to say that willfully and knowingly swearing falsely, consists in stating a thing to be true, without probable cause to believe it to be true."

The Court — " I refuse because the statute is a little different from that. Exception taken by defendant's counsel. I ask your honor to charge that if after investigating this matter, as the evidence shows he did —." The Court — " I decline to hear any more requests to charge, because the jury were called back simply to hear your exceptions to the charge." Prisoner's counsel then said: " If after investigating the matter, as the evidence shows he did, by inquiry of the young lady who made the memorandum in the dining room, and the coroner, he honestly believed that that was the day, that then in testifying to it, he cannot be convicted of perjury for doing it."

The Court — " That is not pertinent to what I have added. I decline to charge it. It is not pertinent to the case, and not the proper time to ask it. Exception taken by defendant's counsel. The said cause was thereupon submitted to the jury, who upon the same day returned into court and rendered their verdict: "

*First.* The case fails to state that the jury had retired from the bar prior to the proceedings, requests, refusals and exceptions quoted. Second. So far as the case discloses the requests were timely and orderly. There is not shown in the case any foundation for the refusal " to hear any more requests to charge." The remark was calculated to dissuade the prisoner's counsel from

making further requests, though it does not seem to have put a full quietus upon the defendant's counsel.

It appears by the evidence of Edwina Long that she kept a book in the restaurant, spoken of in the evidence of appellant, and that there appeared, as of the date of 29th December, 1882, an entry indicating that "Dishler and a stranger" were at the restaurant. She further testified that "Dishler came to see me to inquire of me whether I recollected of Mr. Parish and he being there before the trial about three weeks." She also testified: "I saw Parish on the trial here; I think that was the man that I entered as the stranger." Dr. Hunt, who was a coroner in 1882, was sworn as a witness and testified that he held an inquest on the body of Samuel Bartlett the twenty-ninth of December and made an entry in his book, and he added, "I remember Mr. Dishler coming in to see me some time before the trial here last April in reference to the date of the inquest. On that occasion I took the book out and opened it and read from the book." The request pointed to the inquiry made by the appellant of Long and Dr. Hunt, and pointedly asked the court to instruct the jury that if the appellant after such investigation "honestly believed that that was the day, that then in testifying to it he cannot be convicted of perjury for doing it." To that request, as we have already shown by the quotation from the case, the learned trial judge replied: "That is not pertinent to what I have added, I decline to charge it. It is not pertinent to the case and not the proper time to request it." The evidence quoted was sufficient to call for the consideration of the question by the jury as to whether or not the appellant, after the investigation made, did not honestly and in good faith believe that the 29th of December, 1882, was the day that he and Parish were at the restaurant together.

We think the learned trial judge fell into an error when he said, in response to the request, "it is not pertinent to the case," and that remark may have led the jury to conclude that it was not important for them to consider whether or not the appellant, when he gave his evidence as to seeing Parish in Utica on the twenty-ninth of December, "honestly believed that was the day." Archbald says, in 3 Waterman's Notes (at page 595), viz.: "The false statement must have been willfully made, for if a man swear

falsely from inadvertence or mistake it is no offense." Hawkins says : " It is said no oath shall amount to perjury unless it be sworn absolutely and directly, and that therefore he who swears a thing according as he thinks, remembers or believes, cannot, in respect of such an oath, be found guilty of perjury." (3 Archbald, 595.) Lord C. J. DE GREY said that a person may be convicted of swear- ing that he " thinks *or believes* a fact to be true," but that it renders the proof more difficult. (See note, 3 Archbald, 596.) The Revised Statutes (2 R. S., 681) provides that " every person who shall will- fully and corruptly swear, testify or affirm falsely to any material matter    *    *    *    shall upon conviction be adjudged guilty of perjury." The language of section 96 of the Penal Code differs some in phraseology, and uses the words " willfully and know- ingly" instead of the words " willfully and corruptly." Under either statute it is essential that the testimony given should be false, known to be such, or not known to be true though so alleged, and that in the former case the falsity be known and the falsity intentionally asserted. An honest mistake, an honest misapprehen- sion, may lead a party to mistakenly testify untruly as to a fact when there is the utmost good faith and integrity of purpose. In this class of cases, as in others arising under the criminal law, it is important that the jury be left to inquire what was the intention of the party accused of crime.

The question of intention is one for the jury under proper instruc- tions as to the law. The jury are by law the sole judges of the facts. (Code of Crim. Pro., §§ 419, 420.) The request refused was pertinent and proper, and it was not proper to deny it. The verdict ought to be set aside. If the court had refused the request, and declined a charge otherwise than as it previously charged on the question, the charge would have been sound. Where a jury has been correctly instructed in the body of the charge a refusal to repeat presents no error.

The judgment and order should be reversed and a new trial ordered in the Onondaga County Sessions.

FOLLETT and VANN, JJ., concurred.

Judgment and order reversed and a new trial ordered in the Onondaga Court of Sessions.